Linda CHAFFIN, individually, and on behalf of all others similarly situated, Plaintiff,

v.

Alvin TAYLOR, in his official capacity as Secretary, Department of Health and Rehabilitative Services, Defendant.

No. 80–694–Civ–J–B.

United States District Court,
M. D. Florida,
Jacksonville Division.

Sept. 16, 1981.

---

Mark Greenberg, Michael Chielens, Jacksonville Area Legal Aid, Inc., Jacksonville, Fla., for plaintiff.

Chester G. Senf, Asst. Gen. Counsel, Dept. of Health & Rehabilitative Services, Tallahassee, Fla., for defendant.

## OPINION

SUSAN H. BLACK, District Judge.

This cause is before the Court on plaintiff's Motion for Summary Judgment, filed herein on July 9, 1981. Plaintiff seeks declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201, 2202 and 1343(3) (1976) for a purported class of recipients of Aid to Families with Dependent Children (AFDC) under the Social Security Act, 42 U.S.C. § 601 *et seq.* ("the Act"). Plaintiff claims that she and persons similarly situated were denied AFDC benefits after their "incapacity" was improperly evaluated under regulations issued by the State of Florida, thus violating their rights under both the Act and the Equal Protection Clause of the Fourteenth Amendment. Because the Court agrees with plaintiff's statutory claim, it will not be necessary to reach the constitutional question.

### I. Factual Context

The facts of the case are generally undisputed. Plaintiff suffers from epilepsy and claims to have no other source of income besides AFDC benefits. She says that she has not worked for seven years. Based on a finding of incapacity under the Act and applicable regulations, her household (con-

sisting of herself, her husband and two minor children) had been receiving AFDC benefits until notified by the Florida Department of Health and Rehabilitative Services in January, 1980, that her eligibility had ended.

The Court hereby sets out, with minor omissions, plaintiff's statement of the statutory and factual context of her claim. The paragraphs cited were admitted by defendant in his answer of October 16, 1980.

9. The Aid to Families with Dependent Children (AFDC) Program is a joint federal-state assistance program authorized by Title IV–A of the Social Security Act and administered by the States under the supervision of the Department of Health and Human Services (formerly HEW). 42 U.S.C. § 601 *et seq.* (1976). The AFDC Program provides subsistence cash benefits to Dependent Children and to the relatives who care for them.

10. A "dependent child," pursuant to 42 U.S.C. § 606, is a needy child under eighteen, or under twenty-one and attending school, who is living with a specified relative or relatives, and who is deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent.

11. Regulations promulgated by HEW implementing 42 U.S.C. § 606 are found at 45 C.F.R. § 233.90. 45 C.F.R. § 233.-90(c)(1)(i) and (iv) provide that a child is considered deprived of parental support or care by reason of a parent's mental or physical incapacity if the parent has a physical or mental defect, illness, or impairment which is expected to last for at least thirty days, and is of such a debilitating nature as to reduce substantially or eliminate the parent's ability to support or care for the otherwise eligible child.

12. Florida participates in the AFDC Program pursuant to Fla.Stat. § 409.235 (1979). The AFDC Program in the State of Florida is administered by the Department of Health and Rehabilitative Services (hereinafter HRS).

. . . .

15. In January of 1979, HRS determined that Linda Chaffin was incapacitated within the meaning of applicable federal law, and the Chaffin household began to receive a monthly AFDC check. From January through June of 1979, the Chaffin household received a monthly check of $196 each month, and since that time, the monthly check has been in the amount of $230 per month. The check reflects the standard AFDC payment to a four-person household in Florida with no other source of income.

16. In January of 1980, Ms. Chaffin's current eligibility was reconsidered in a regular periodic redetermination of eligibility, in accordance with HRS policy. An eligibility determination and redetermination is made by HRS' Incapacity Determination Unit by gathering and reviewing social and medical data relating to the subject's current circumstances.

17. On February 25, 1980, the Incapacity Determination Unit directed the termination of Ms. Chaffin's household's grant, stating that "according to medical evidence submitted, she is capable of functioning as homemaker as she was not judged for employment."

18. In a notice dated February 27, 1980, Ms. Chaffin was advised that her AFDC grant would be cancelled as a result of the decision of the Incapacity Determination Unit.

19. Ms. Chaffin appealed the determination of the Incapacity Determination Unit, and was provided with a hearing before a State Hearing Officer of HRS. This hearing was held on June 23, 1980, and Ms. Chaffin's household's grant was continued pending the result of the hearing.

20. At the June 23, 1980 hearing, Ms. Chaffin presented evidence and testimony establishing that HRS terminated her grant without giving any consideration whatsoever to whether she was currently capable of engaging in employment, and that HRS based its decision solely on the finding of the Incapacity Determination Unit that she was capable of engaging in "homemaking." Representatives of HRS did not contest this claim, and asserted that it was proper and lawful to judge

Ms. Chaffin's incapacity without regard to her ability to engage in employment. 21. On July 14, 1980, the Hearing Officer affirmed the decision of the Incapacity Determination Unit, and authorized the termination of Ms. Chaffin's household's grant as of July 31, 1980. The hearing decision, . . . states that "Ms. Chaffin's incapacity was evaluated in relation to her ability to 'care for children,' not in relation to her ability to 'provide support for' them," and that "the Department had no responsibility in exploring her capabilities for employment, nor whether such employment opportunities, in fact existed or were limited to her." Plaintiff's Complaint of July 29, 1980, at 3–6.

By stipulation of the parties dated August 11, 1980, defendant agreed that plaintiff would remain eligible for AFDC assistance until such time as the Court entered a final order in the case.

## II. Venue

Preliminarily, it should be noted that the Court denied defendant's Motion to Dismiss or in the Alternative to Transfer for Improper Venue, filed herein on September 2, 1980, by order dated October 2, 1980. The order rested on the decision of the Fifth Circuit in *Florida Nursing Home Association et al. v. Page*, 616 F.2d 1355, 1360–61 (5th Cir. 1980). The Supreme Court denied a petition for certiorari on that portion of the *Florida Nursing Homes* case cited as authority for the Court's October 2 order. *See* 449 U.S. 872, 101 S.Ct. 211, 66 L.Ed.2d 92 (1980). [Another portion of the case was reversed *sub nom Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Association*, 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981).]

## III. Jurisdiction

Effective December 1, 1980, Congress amended the federal-question jurisdiction statute to eliminate the requirement of an amount in controversy. Pub.L. 96–486, 94 Stat. 2369 (Dec. 1, 1980). Section four of the law provided that its provisions would apply to any civil action pending on the date of enactment. Therefore, the Court has jurisdiction of this cause pursuant to 28 U.S.C. § 1331 (1976).

## IV. The Controversy: State Application of Federal Regulation

A live controversy now exists between these parties, defendant's third affirmative defense notwithstanding. Florida regulations conform to their federal counterparts in defining eligibility for AFDC on the basis of parental incapacity, *see* Chap. 10C–1.-59, Florida Administrative Code. The State's application of the regulation is at issue here.

Defendant's fourth affirmative defense makes this clear. In its answer, defendant denies plaintiff's allegation that "HRS has denied AFDC benefits and will continue to deny AFDC benefits to a class of applicants solely on the finding that the applicant is able to 'care for' an otherwise eligible child, and without making any finding that the applicant is able to 'support' the otherwise eligible child," paragraph 23, Complaint of July 29, 1980, and paragraph 23, Answer of October 16, 1980. Yet the fourth affirmative defense says:

> The Plaintiff's interpretation of 42 U.S.C. § 606 would render the words "or care" meaningless and would establish the only criteria for eligibility as the ability to "support." Congress created alternate criteria for eligibility based on "support" or "care" depending upon the education, training, occupation and abilities of the applicant. The Plaintiff's interpretation would creat [sic] instant eligibility for any parent homemaker who is without employment, skills or training. This was not the intent of Congress.

Defendant's position is that the State need only evaluate a parent's primary role in the household—either breadwinner or caretaker—and then evaluate his or her "incapacity" accordingly. The person assigned to the breadwinner role would be incapacitated if he or she can no longer support the family. The person labelled as homemaker is incapacitated if he or she cannot care for the family. The Court so interprets the assertion in defendant's reply memorandum of July 27, 1981, "[f]urther, if the Plaintiffs

[sic] suggestion that a parent need only prove inability to support or inability to care for regardless of their role would place the persons on the public roles [sic] of which the children were not 'deprived' since the parents had never fulfilled that duty." Def. Mem. at 9.

This same attention to the parent's primary duty or role in the household guides the July 14, 1980, decision of the State Hearing Officer affirming plaintiff's ineligibility for AFDC benefits.

> The governing program laws and regulations regarding the issue raised in this hearing are found at Florida Statutes, 409.235(3) which provides that AFDC benefits shall not be granted on the basis of mental or physical incapacity, "unless the parent liable for support of the child is deemed to be incapacitated in accordance with the rules set forth by the Department." In the implementation of this statutory mandate, the Department has adopted Administrative Rule 10C–1.- 59. This rule provides that in the determination of deprivation of the support or care of one or both parents on the basis of incapacity that the definition in the Federal Regulations will be used. Incapacity for AFDC purposes is defined in Federal Regulations at 45 CFR 233.- 90(c)(iv) as follows:
>
> > "Physical or mental incapacity of a parent shall be deemed to exist when one parent has a physical or mental defect, illness or impairment. The incapacity shall be supported by competent medical testimony and must be of such debilitating nature as to reduce substantially or eliminate the parent's ability to support or care for the otherwise eligible child and be expected to last for a period of at least thirty (30) days. In making the determination of ability to support, the Agency shall take into account the limited employment opportunities of handicapped individuals."
>
> Both the Administrative Rule mandated by FS 409.235(3) at FAC 10C–1.159 and the Federal Regulations at 45 CFR 233.- 90(c)(iv) recognize that a child may be deprived either when one or both parents is incapacitated to the extent that he/she is unable to provide "support" for the child or unable to provide "care" for the child. Thus, under the regulation incapacity of either parent may be established not only on a determination of inability to provide "support" for a child, but also, separately and distinctly upon a determination of inability to provide "care" for the child. This distinction is highlighted in the Federal Regulation first by stating that an incapacitating condition must be such as to, "reduce substantially or eliminate the parent's ability to 'support' *or* 'care for' (emphasis added) the otherwise eligible child . . . ." In furtherance of this distinction the regulation provides that in making the determination of "ability to support", "the Agency shall take into account the limited employment opportunities of handicapped individuals." No such requirement is included in the regulation in the determination of ability to provide "care." If the requirement were equally applicable in the determination of ability to provide support or care, the rule would have so stated, or in the alternative, the rule may have simply substituted the word "incapacity" for the phrase, "ability to support", in the last sentence of the rule making it all inclusive in both determinations.
>
> *Thus under the regulation, since Mrs. Chaffin's incapacity was evaluated in relation to her ability to "care for" children, not in relation to her ability to "provide support for" them, the Department had no responsibility in exploring her capabilities for employment, nor whether such employment opportunities, in fact, existed or were limited to her.* (emphasis added).

Final Order of State Hearing Officer, July 14, 1980, at 6–7.

## V. The State's Error

Purely as a matter of textual interpretation, the Hearing Officer's reading of the governing regulation is erroneous. He reads the disjunctive, "to support *or* care for" in the definition of parental incapacity to authorize the State to make a prelimi-

nary search for "ample evidence as to the roles played and duties performed" in a particular household, *Id.* at 6. Once a parent's role is ascertained, incapacity is measured in light of that role only. This defeats the plain meaning of the regulation. Since a parent may be incapacitated on either ground, a showing of capacity on one ground leaves the possibility that incapacity still exists on the other. By restricting evaluation of a parent to his or her "roles played and duties performed," the Hearing Officer in effect re-wrote the regulation to provide that a parent may be found incapacitated on the basis of inability to support *and* care for a dependent child. A showing of *capacity* on only one ground—or arbitrary disregard of the "irrelevant" ground—improperly leads to denial of benefits.

The disjunctive "support or care for" is not to be read to create separate categories of "supporters" and "carers," but rather aims to establish two criteria by which any one parent may show eligibility and need. The ambiguity inherent here has long been the subject of discussion among welfare administrators. In an "action transmittal" dated October 23, 1980, and attached as an exhibit by both parties, Ira Goldstein, Acting Associate Commissioner for Family Assistance in the federal Department of Health and Human Services, interpreted the applicable regulation as follows:

PURPOSE:

Questions have been raised in relation to what consideration, if any, may be given to the particular role or function a parent was fulfilling [sic] prior to the onset of an incapacitating condition in determining whether a child can be considered deprived of parental support or care by reason of incapacity of that parent. This interpretation clarifies that *a mental or physical incapacity establishes deprivation without further showing that the parent was supporting the family or caring for the children prior to becoming incapacitated.*

INTERPRETATION:

Section 406(a)(1) of the Social Security Act and Federal regulations at 45 CFR 233.90(a) and (c)(1)(i) refer to a child who is "deprived of parental support or care" by reason of the death, continued absence from the home, or physical or mental incapacity of *a parent.* The regulation specifies that the phrase "deprived by reason of" encompasses the situation of any child who is in need and otherwise eligible and whose parent—father or mother—has a physical or mental incapacity and that this interpretation is equally applicable whether the parent was the chief breadwinner or devoted himself or herself primarily to the care of the child.

In the phrase "deprived of parental support or care" the term "parent" refers to either the father or the mother and does not require, in two-parent households, that both be incapacitated. Incapacity of a parent is a circumstance which deprives a child of support or care. *Whether or not the parent worked or fulfilled the role of homemaker prior to the onset of the incapacity is not germane. If the parent has an existing physical or mental condition that precludes him/her from employment or from providing care to the child, the factor of deprivation by reason of incapacity is satisfied.* (emphasis added).

This transmittal supersedes any other previous interpretations to the contrary.

Defendant claims that this "action transmittal" clarifies little, since its author continues to speak of an interpretation "equally applicable whether the parent was the chief breadwinner or devoted himself or herself primarily to the care of the child," implying that a preliminary determination of breadwinner or homemaker status is permitted and perhaps even required. The Court is of the opinion that such a contention is overly restrictive and ignores the clear import of the last two italicized sentences in the above passage. The federal agency interpretation states that whether or not a parent worked or fulfilled the role of homemaker prior to the onset of incapacity is "not germane" to the inquiry. Yet the State's approach makes such a preliminary determination crucial to an assessment

of incapacity and thus eligibility for benefits. This is error. Both ability to support and ability to care for a child must be evaluated for any individual parent. Incapacity is to be measured by inability to do either.

The Hearing Officer justified a refusal to consider employment opportunities in the case of a "homemaker" on the ground that the pertinent federal regulation omits any reference to limited employment opportunities in discussing the "ability to care for." Yet the State amended its own administrative rules to require consideration of such opportunities. Defendant's Exhibit 6 to its reply memorandum of July 27, 1981, is a Certification of Administrative Rules filed with the Florida Department of State on May 20, 1981, amending Section 10C–1.59 of the Florida Administrative Code in pertinent part as follows: "(2)(e) A parent who has never engaged in employment or homemaking due to his/her condition may be determined incapacitated. *Consideration will be given to the limited employment opportunities that may exist for the handicapped.*" (emphasis added). Likewise, defendant's Exhibit 7 is a copy of the federal approval of Florida's state plan for implementation of 45 C.F.R. § 233.90, effective July 1, 1980. The State plan specifies that, in determining incapacity under § 233.-90(c)(1)(i) and (iv),

> A parent who has never been able to work or assume housekeeping and child care responsibilities can also be determined incapacitated. A medical review team in each District determines the existence of incapacity .... *The medical review team must give consideration in reaching a decision to the limited employment opportunities that may be available to handicapped persons.* (emphasis added).

## VI. An Expansive View of Incapacity

■ This broad construction of parental incapacity in the definition of "dependent child," 42 U.S.C. § 606(a)(1), and the concomitant obligation on the State to consider employability even in the case of a "homemaking" parent, flows from the remedial purposes of the Social Security Act

and the duty of courts to construe the Act in favor of coverage if such a construction is reasonable. *Sanchez v. Schweiker,* 643 F.2d 1128, 1131 (5th Cir. 1981). The Supreme Court has repeatedly made this duty clear. "The Act ... provides benefits to two-parent families made needy by the incapacity of either parent, regardless of which parent may have been the 'principal wage-earner.'" *Califano v. Westcott,* 443 U.S. 76, 92 n.9, 99 S.Ct. 2655, 2665 n.9, 61 L.Ed.2d 382 (1979). Thus plaintiff's primary role as a homemaker and her possible ability to care for her family—the "ample evidence as to the roles played and duties performed in this household by Mrs. Chaffin and her husband," according to the Hearing Examiner, decision of July 14, 1980 at 6—is irrelevant to her eligibility under the "support" criterion.

A participating State may not deny assistance to persons who meet eligibility standards defined in the Social Security Act unless Congress has indicated that the standards are permissive. [citations omitted]. Congress has specified that programs, like AFCD–FC, which employ the term "dependent child" to define eligibility must be available for "all eligible individuals." § 402(a)(10), 42 U.S.C. § 602(a)(10). *Miller v. Youakim,* 440 U.S. 125, 133–34, 99 S.Ct. 957, 963, 59 L.Ed.2d 194 (1979). *See also Quern v. Mandley,* 436 U.S. 725, 740, 98 S.Ct. 2068, 2077, 56 L.Ed.2d 658 (1978); *Townsend v. Swank,* 404 U.S. 282, 286, 92 S.Ct. 502, 505, 30 L.Ed.2d 448 (1971). This is in keeping with the general rule that administrative regulations such as this one are to be interpreted broadly and liberally to effectuate their central purposes. *Pennzoil Co. v. Federal Energy Regulatory Commission,* 645 F.2d 360, 383 (5th Cir. 1981). Therefore, the Court holds that parents receiving AFDC benefits on the basis of incapacity may establish eligibility by inability to support *or* care for their minor children. Since the State applies regulations facially conforming to federal guidelines with the effect of denying eligibility where it may be properly shown, an injunction and declaratory judgment prohibiting such application will issue.

Plaintiff's claim for relief under the Equal Protection Clause need not be reached as the Court does not decide the constitutional issue when narrower, statutory grounds are available. *See Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 341, 56 S.Ct. 466, 480, 80 L.Ed. 688 (1936) (Brandeis, J. concurring); *Roberts v. Austin*, 632 F.2d 1202, 1214 (5th Cir. 1980).

## JUDGMENT

In accordance with the Opinion entered herein on this date, it is

ADJUDGED:

■ 1. That the practice of the Florida Department of Health and Rehabilitative Services (hereinafter "HRS") of denying AFDC benefits to a household otherwise eligible under the AFDC-Incapacity Program solely based on a determination that the applicant is able to "care for" the minor child(ren), when the defendant Alvin Taylor, in his official capacity as Secretary of HRS, and his agents have made no determination that the applicant is able to "support" the minor child(ren) within the meaning of the Social Security Act, 42 U.S.C. § 606(a) (1976) (hereinafter "the Act") and the regulations promulgated thereunder and appearing at 45 C.F.R. § 233.90(c)(1)(iv) (hereinafter "the regulations"), violates both the Act and the regulations.

■ 2. That defendant Alvin Taylor in his official capacity as Secretary of HRS, and his agents are hereby permanently enjoined from denying AFDC benefits to a household otherwise eligible under the AFDC-Incapacity Program solely based on a determination that the applicant is able to "care for" the minor child(ren) when defendant or his agents have made no determination that the applicant is able to "support" the minor child(ren) within the meaning of the Act and the regulations.