In the Matter of the Petition by Todd SADEK for Judicial Review of Administrative Proceedings of Job Service North Dakota.

Todd SADEK, Appellant,

v.

JOB SERVICE NORTH DAKOTA, Appellee.

Civ. No. 870117.

Supreme Court of North Dakota.

Feb. 25, 1988.

Thomas M. Disselhorst, Bismarck, and (Sterling) James Smith (argued) (non-resident attorney), Hettinger, for appellant.

William G. Peterson, Asst. Atty. Gen., Bismarck, for appellee.

MESCHKE, Justice.

Todd Sadek appealed a denial of unemployment benefits. We remand for taking additional evidence on an essential issue and for reconsideration.

Todd Sadek applied for unemployment benefits in August 1984. He was told that he was not then qualified and that, to receive benefits, he needed to earn ten times his weekly benefit to overcome a previous disqualification. Job Service sent him to Doyle Apiaries, which employed him. Sadek testified that, when he was sent to Doyle, he asked Job Service personnel whether work there would overcome his disqualification, and was told it would. The owners of Doyle also owned N.C.I. Corp., an insulating and storage business which paid into the unemployment fund on Sadek's earnings. After Sadek's work at Doyle ended, he again applied for benefits, but Job Service ruled that Sadek's earnings from Doyle were agricultural wages which

did not qualify him for unemployment benefits.

Sadek sought district court review of Job Service's decision. The court remanded the case for Job Service to determine whether a Job Service employee had actually advised Sadek that his employment at Doyle would overcome his disqualification. After a referee took further evidence and upon the recommendation of an assistant attorney general who reviewed the prior evidence and listened to the tape of the additional hearing, Job Service ruled that Sadek had not been told that his employment with Doyle would overcome his disqualification. Job Service adhered to its denial of benefits. Sadek again appealed to the district court, which affirmed the denial. Sadek appealed to this court.

Sadek argues a series of issues: that he was denied procedural due process by Job Service's unorthodox division of the hearing and the decision on the remand; that he was denied substantive due process by Job Service's failure to properly advise him of the nature of employment necessary to overcome disqualification; that the administrative decision was the result of fraud; and that the findings and conclusion of the Bureau were not supported by evidence. We find merit in only the latter issue—whether the evidence supports the findings and conclusions of the Bureau.

"[I]n our review we look to the record compiled by the administrative agency." *Sonterre v. Job Service North Dakota*, 379 N.W.2d 281, 283 (N.D.1985). We affirm an administrative decision unless any of six statutory factors appears, one factor being that "[t]he findings of fact made by the agency are not supported by a preponderance of the evidence." NDCC 28–32–19.[1]

■ In attacking the evidence before the agency, Sadek asks for remand to properly determine whether his work at Doyle was non-qualifying agricultural labor under the provisions of NDCC 52–01–01(17) and (18).[2]

1. NDCC 28–32–19 reads as follows:

"... [T]he court shall affirm the decision of the agency unless it shall find that any of the following are present:
"1. The *decision or determination is not in* accordance with the law.
"2. The decision is in violation of the constitutional rights of the appellant.
"3. Provisions of this chapter have not been complied with in the proceedings before the agency.
"4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
"5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
"6. The conclusions and decision of the agency are not supported by its findings of fact."

2. NDCC 52–01–01(17) and (18) read:

"17. 'Employment' means:
"...
"m. Service performed after December 31, 1977, by an individual in agricultural labor as defined in subdivision a of subsection 18 when:
"(1) *Such service is performed for a person* who:
"(a) During any calendar quarter in either the current or the preceding calendar year paid remuneration in cash of twenty thousand dollars or more to individuals employed in agricultural labor (not taking into account service in agricultural labor performed before January 1, 1980, by an alien referred to in paragraph 2); or
"(b) For some portion of a day in each of twenty different calendar weeks, whether or not such weeks were consecutive, in either the current or the preceding calendar year, employed in agricultural labor (not taking into account service in agricultural labor performed before January 1, 1980, by an alien referred to in paragraph 2) ten or more individuals, regardless of whether they were employed at the same moment of time.
"18. 'Employment' shall not include:
"a. Service performed by an individual in agricultural labor, except as provided in subdivision m of subsection 17. For purposes of this subdivision, the term 'agricultural labor' means:
"...
"(2) Remunerated service performed after December 31, 1971, in agricultural labor as defined in section 3306(k) of the Federal Unemployment Tax Act [68A Stat. 439; 26 U.S.C. 3301 et seq.]."
The pertinent federal statutes read:
"For purposes of this chapter, the term 'agricultural labor' has the meaning assigned to such term by subsection (g) of section 3121, ..." 26 U.S.C. 3306(k).
26 U.S.C. 3121(g) reads:
"For purposes of this chapter, the term 'agricultural labor' includes all service performed—
"(1) on a farm, in the employ of any person, in connection with cultivating the soil, or

Although Job Service asserts that Sadek did not timely raise that issue, it was the central reason for the appealed ruling that Sadek's employment did not qualify for benefits. Job Service found that Doyle was an agricultural business, not covered by job insurance. The decision said:

"Doyle Apiaries is an agricultural business and has not applied for job insurance coverage. The owner of Doyle Apiaries also owns a company by the name of N.C.I. Corporation. This business is covered by job insurance. The claimant was paid his wages through N.C.I. Corporation, although he performed services for Doyle Apiaries. The employer reported the claimant's wages under the name of N.C.I. Corporation."

On appeal, the trial court concluded that Sadek "did not meet the eligibility requirements of the law" because of his agricultural employment. Job Service cannot fairly say that Sadek did not raise the issue.

▋ In the initial appeal, Job Service's field representative, Gordon Risa, testified that he had talked to Sadek's employer at Doyle and subsequently filed a Statement to Correct Employer's Contribution and Wage Report. He did this because Sadek had come into Job Service to check on his claim status, and "[s]omeone in Bismarck must have recognized that it says—that bees is, under unemployment purposes, is considered agricultural wages." Risa went on to say that, "Now, under this Doyle Apiaries, which is another part of NCI which is agriculture dealing strictly with bees, handling bees, putting bees out, removing the hives, is considered under IRS law, agriculture wages, which is something not that many people are aware of."

Establishing whether beekeeping activities are agricultural is not as simplistic as Job Service represented. Sadek cites an Internal Revenue Ruling on the subject. A complex of factors must be considered, including whether the location was a farm, as defined by statute; whether bees were raised at the farm; and whether more than one-half of the honey handled in the pay period was produced on the farm of the employer. See Rev.Rul. 55-456, 1955-2 C.B. 418. In addition, the amount of total wages and the numbers of individuals employed in the current or preceding calendar year of the enterprise affect the determination. See statutes set out in footnote 2, *supra.* The agency did not consider evidence on these essential factors.

Furthermore, NCI paid into the unemployment fund until Job Service intervened on its own initiative and refunded the amount paid into the unemployment fund for Sadek and another employee. Also, the record shows that Sadek performed work other than beekeeping for NCI on at least one occasion.

It is difficult to fault Sadek for not understanding his employer's responsibility for job insurance, when the employer himself did not understand it. Ed Doyle was unsure about the status of unemployment insurance coverage for his apiary business:

"Q. And is Doyle Apiaries—is not insured under the unemployment law. Is that correct?

"A. I guess that is correct. I do not know. But I guess that's correct.

" . . .

"Q. Did you initially pay his wages out of NCI as opposed to out of Doyle Apiary?

"A. They were paid out of Doyle Apiary.

" . . .

"Q. Why would you pay him out of one checkbook and report it under another firm's report?

"A. I don't know. And yet I own both businesses."

in connection with raising or harvesting any agricultural or horticultural commodity, including the raising, shearing, feeding, caring for, training, and management of livestock, bees, poultry, and fur-bearing animals and wildlife;
" . . .

"As used in this subsection, the term 'farm' includes stock, dairy, poultry, fruit, fur-bearing animal, and truck farms, plantations, ranches, nurseries, ranges, greenhouses or other similar structures used primarily for the raising of agricultural or horticultural commodities, and orchards."

Nothing evidenced the details necessary to decide whether Sadek's work at Doyle was agricultural. Without evidence, a reasoning mind cannot decide "that the factual conclusions reached were proved by the weight of the evidence from the entire record." *Lorenzen v. State Highway Commissioner,* 401 N.W.2d 526, 528 (N.D. 1987).

■ NDCC 28–32–18[3] authorizes a remand to the agency for additional evidence if material evidence was not presented at the hearing. Evidence about the nature of Sadek's employment was never developed. Sadek was not represented by counsel at the initial hearing. In view of Job Service's position here, that the subject of qualifying work is too complex for its personnel to understand and properly advise job applicants, we can understand why the claimant did not marshall all relevant evidence. If the matter was too complex for trained Job Service employees to counsel a job seeker, "there were reasonable grounds for the failure" of an uninformed applicant to develop all the evidence at the hearing.

■ In an addendum, Sadek has submitted to this court a general information letter from the Internal Revenue Service, suggesting that "the services performed [by Sadek] would not be considered agricultural labor." While details considered in that assessment are not set out, it appears to us that evidence about that work is material to deciding whether it was agricultural, since it has "a tendency to significantly support the position of the party advancing its admission." *Insurance Services Office v. Knutson,* 283 N.W.2d 395, 400 (N.D.1979). Accordingly, under NDCC 28–32–18, we remand for taking and consideration of additional evidence on whether Sadek's work was in fact non-qualifying agricultural work.

We remand with "leave to adduce additional evidence" on whether Sadek's employment at Doyle was disqualifying agricultural work. Job Service must reconsider Sadek's application for benefits in the light of that essential evidence.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.

3. NDCC 28–32–18 says:
   *"Consideration of additional or excluded evidence.*—If an application for leave to adduce additional evidence is made to the court in which an appeal from a determination of an administrative agency is pending, and it is shown to the satisfaction of the court that such additional evidence is material and that *there were reasonable grounds for the failure to adduce such evidence in the hearing or proceeding had before the administrative agency,* or that such evidence is material to the issues involved and was rejected or excluded by the agency, the court may order that such additional evidence be taken, heard, and considered by such agency on such terms and conditions as the court may deem proper. After considering such additional evidence, the administrative agency may amend or modify its findings of fact, conclusions of law, and decision, and shall file with the court a transcript of such additional evidence together with its new or modified findings of fact, conclusions of law, and decision, if any." (emphasis added.)