Rick NELSON and Debra
Nelson, Appellants,

v.

CASS COUNTY SOCIAL SERVICES,
Cass County Social Service Board, and
North Dakota Department of Human
Services, Appellees.

Civ. No. 870323.

Supreme Court of North Dakota.

May 16, 1988.

Mary Deutsch Schneider, Legal Assistance of North Dakota, Fargo, for appellants; argued by Mary Deutsch Schneider.

Human Services Dept., Bismarck, for appellees; argued by Sidney J. Hertz Fiergola.

ERICKSTAD, Chief Justice.

In this appeal we are asked to determine whether or not the North Dakota Department of Human Services (Department) lawfully terminated Debra Nelson's cash subsistence payments under the Aid to Families with Dependent Children (AFDC) program. We decline to make the determination without the benefit of meaningful evidence regarding the United States Department of Health and Human Services interpretation of Title 45, section 233.90(c)(1)(iv) of the Code of Federal Regulations and, more specifically, whether or not the Department's distinction between a "breadwinner" and a "homemaker" contravenes federal regulations. Accordingly, in the interests of justice and comity we remand this appeal to the Department for proceedings consistent with this opinion.

Rick and Debra Nelson are married and have one son who is currently three years old. The Nelsons received AFDC subsistence payments in 1986 until a "STATE

REVIEW TEAM REPORT" from a regional branch of the Department concluded: "IN VIEW OF THE FACT THAT [Debra] IS CAPABLE OF FULFILLING HER ROLE AS A HOMEMAKER, IT IS REQUESTED THAT THIS AFDC CASE BE CLOSED EFFECTIVE DECEMBER 31, 1986."

Rick Nelson requested a hearing on the decision to terminate Debra's AFDC eligibility. The "Appeals Supervisor" for the Department sent out notice and conducted the hearing on February 3, 1987. The central focus of the hearing was Debra's ability to function as a housewife, or in the Department's parlance, a "homemaker."

The executive director of the Department reviewed the testimony presented at the hearing and concluded Debra's AFDC benefits were properly terminated. The executive director found that Debra "has demonstrated that she can function capably in the areas of child care, cooking, doing laundry, washing dishes, and other housekeeping skills, if given the opportunity, support and encouragement." In so finding, the executive director discounted most of the testimony of Rick, who was very critical of Debra's homemaker skills. The executive director characterized Rick's testimony and Rick's mother's testimony as follows:

"[Rick] described a number of incidents which he considered to be examples of [Debra's] shortcomings and which amounted, for the most part, to complaints about her hygiene. He did not deny that between the two of them, she does most of the cooking, cleaning, dishes, laundry, grocery shopping, and child care. Her mother-in-law testified that [Debra] and the child stay with her several nights a week and that she assists [Debra] with the grocery shopping and laundry."

Rick and Debra requested a rehearing on March 8, 1987. The Department's executive director denied the request on March 16, 1987. The Nelsons retained counsel and appealed the Department's decision to district court.

In the district court and on this appeal the Nelsons contend: (1) The Department's

findings are not supported by a preponderance of the evidence; (2) they were deprived of a fair hearing because the Department relied on information outside the hearing in making its determination that Debra could function adequately as a homemaker; and (3) the Department's "method of applying a separate homemaker standard is not in accordance with the law." The district court rejected the first argument and declined to consider the latter two because they were not presented to the Department.

I.

We affirm the Department's finding that Debra's mental incapacity does not significantly interfere with her ability as a homemaker. We conclude this finding is supported by a preponderance of the evidence as required by section 28–32–19, N.D.C.C., which provides in part:

"*28–32–19. Scope of and procedure on appeal from determination of administrative agency.* . . . the court shall affirm the decision of the agency unless it shall find that any of the following are present:

\*    \*    \*    \*    \*    \*

5. The findings of fact made by the agency are not supported by a preponderance of the evidence. . . ."

We have defined the preponderance of the evidence standard in terms of whether or not a "reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record." *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979). Determinations of "mental incapacity" and whether or not the mental incapacity "significantly interferes" with the parent's ability to provide care to a child require a high degree of subjective judgment. We do not substitute our judgment for that of the agency. *Id.* We believe a reasoning mind could have reasonably concluded that while Debra's mental incapacity prevents her from being a perfect homemaker, "such mental impairment does not significantly interfere with

her capacity to discharge her homemaker and child care responsibilities."

## II.

Because we remand this appeal on the issue of the permissibility of the Department's breadwinner/homemaker distinction, we deem it premature to reach the issue of whether or not the Department deprived the Nelsons of the procedural due process provided in the North Dakota Administrative Agencies Practice Act. *See* Chapter 28–32, N.D.C.C.

## III.

The AFDC program is established and defined in several related provisions of Title IV–A of the Social Security Act. Codified at Title 42 U.S.C. section 601 *et seq.*, AFDC is a cooperative federal-state assistance program which provides subsistence cash benefits to a "dependent child" and to individuals who care for a "dependent child." A "dependent child" is a:

"[N]eedy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home (other than absence occasioned solely by reason of the performance of active duty in the uniformed services of the United States), or physical or *mental incapacity of a parent....*" 42 U.S.C. § 606(a). [Emphasis added.]

A needy child's deprivation of parental support or care by reason of physical or mental incapacity is explained at Title 45 CFR section 233.90(c)(1)(iv):

"(iv) *'Physical or mental incapacity'.* 'Physical or mental incapacity' of a parent shall be deemed to exist when one parent has a physical or mental defect, illness, or impairment. The incapacity shall be supported by competent medical testimony and must be of such a debilitating nature as to *reduce substantially or eliminate the parent's ability to support or care* for the otherwise eligible child and be expected to last for a period of at least 30 days. In making the determination of ability to support, the agency shall take into account the limited employment opportunities of handicapped individuals." [Emphasis added.]

The parties disagree about the meaning of this section and whether or not the State's parallel section conflicts with the above-quoted section. Section 75–02–01–13 of the North Dakota Administrative Code also addresses the parent's physical or mental incapacity:

"*75–02–01–13. Physical or mental incapacity.*

"1. Incapacity within the meaning of the aid to families with dependent children program is considered established when a parent has a physical or mental defect, illness, or disability, which *significantly interferes with the parent's capacity to earn a livelihood or carry on homemaking activities and care for the children.*

a. The parent whose incapacity results in the deprivation of a child's support or care may be either parent.

b. If the incapacitated parent is a breadwinner, the incapacity must be such that it substantially precludes employment in the parent's usual occupation or another occupation to which the parent can adapt.

\*　\*　\*　\*　\*　\*

d. The incapacitated parent who is a homemaker will have eligibility for aid to families with dependent children related to the parent's decreased capacity for performing homemaking activities and caring for the children. The incapacity might be such that assistance from other members of the family will suffice to give normal care to the children. If this cannot be done, a person from outside the family unit must be hired to help carry out the homemaking functions. Eligibility under these conditions only exists when the additional costs of hiring outside help creates a deficit in the family budget."

The Nelsons contend the State's distinction between a "homemaker" and "breadwinner" contravenes federal policy. They contend the inquiry must examine whether or not one of the parents is incapacitated as

a breadwinner *or* a homemaker. Thus, the Nelsons argue that Debra is entitled to receive AFDC benefits if her alleged incapacity substantially reduces or eliminates her ability to serve as a homemaker *or* as a breadwinner. The Nelsons assert 45 CFR § 233.90(c)(1)(iv) requires the Department to determine both a parent's ability to provide "support" for a child and a parent's ability to provide "care" for a child.

The Department argues the State's plan is consistent with federal regulations. The Department adds that states "may impose more restrictive conditions on applicants for public assistance" than the federal regulations require.[1]

The Department identifies the parent's function in the family and then determines whether or not the alleged mental incapacity "significantly interferes" with that function. The Department thus analyzed Debra's eligibility as follows:

"That is not the standard for AFDC in a two-parent household in which one parent is considered the 'breadwinner' and the other the 'homemaker,' as the above-quoted eligibility standards indicate. In this case, [Rick] described himself as the head of the household and the breadwinner. The incapacity of the wife is, then, reviewed from the standpoint of whether [Debra] has a physical or mental impairment which significantly interferes with her capacity to discharge homemaker and child care responsibilities."

The Nelsons rely on a 1981 federal district court decision and a United States Department of Health and Human Services "action transmittal" dated October 23, 1980, in support of their position. In *Chaffin v. Taylor*, 521 F.Supp. 1344 (M.D.Fla. 1981), a federal district court reviewed 45 CFR § 233.90(c)(1)(iv) and the legal issue presented in this appeal. The *Chaffin* court concluded that "[b]oth ability to support and ability to care for a child must be evaluated for any individual parent. *Incapacity is to be measured by inability to do either.*" [Emphasis added.] *Chaffin, supra* at 1350. The Department does not distinguish *Chaffin* on its facts or quarrel with its exposition of the law. The Department argues that the Nelsons failed to raise this issue at the Department's hearing. The Department also argues that the breadwinner/homemaker distinction is used in at least sixteen other states and that the United States Department of Health and Human Services would instruct those states to eliminate the breadwinner/homemaker distinction if in fact the distinction ran afoul of federal policy.

The Department's policy of restricting the inquiry to the parent's "usual function" within the home has no apparent basis in the appropriate federal regulations. It does not follow however that the Department's distinction is contrary to federal regulation. Although the conclusion in *Chaffin* may ultimately be embraced by federal appellate courts, we are reluctant at this time to adopt the *Chaffin* conclusion, especially in light of the present record on appeal.

We are troubled, especially, by certain practical consequences of the Department's breadwinner/homemaker distinction.[2] In the instant case the Department contends Debra's usual function is a homemaker and she therefore must present evidence that she is incapacitated as a homemaker. Thus, Debra's eligibility for AFDC is contingent upon showing the Department—the agency which may institute neglect proceedings against families in which children do not receive appropriate care—that she is unable to care for her child.

---

1. This assertion is highly suspect. *See, e.g., Quern v. Mandley,* 436 U.S. 725, 98 S.Ct. 2068, 56 L.Ed.2d 658 (1978) (Supreme Court noted that "[a]s to AFDC, the law is indeed clear. Each State is entirely free to set its own monetary standard of need and level of benefits. [Citations omitted.] But the States are not free to narrow the federal standards that define the categories of people eligible for aid."). 436 U.S. at 740, 98 S.Ct. at 2077.

2. Section 50–09–02(3), N.D.C.C., requires the Department to promulgate "suitable standards and procedure to ensure uniform and equitable treatment of all applicants for aid to dependent children." Whether or not the breadwinner/homemaker distinction "ensure[s] uniform and equitable treatment" pursuant to § 50–09–02(3) is a question the litigants should address during the remand.

Essentially the Nelsons ask this Court to construe a federal regulation promulgated by a federal agency at the direction of Congress. We are, of course, not without authority to invalidate the Department's breadwinner/homemaker distinction. However, if the basis of invalidating the Department's distinction is a federal regulation, then we think it prudent to ascertain the position of the federal agency charged with interpreting the federal regulation.[3] Notwithstanding our usual practice of refusing to consider an issue on appeal that was not raised at the Department hearing, *e.g.*, *Amoco Production Co. v. North Dakota Industrial Commission*, 307 N.W.2d 839, 849 (N.D.1981); *Gramling v. North Dakota Workmen's Comp. Bur.*, 303 N.W.2d 323, 326 (N.D.1981), we will remand this appeal in the interests of justice[4] and so that this area of the law may be clarified for the Department and for other applicants similarly situated.[5] Accordingly, we remand this case to the Department of Human Services so that timely "evidence" may be obtained and an appropriate decision can be made by the Department relating to the United States Department of Health and Human Services' interpretation of 45 CFR § 233.90(c)(1)(iv), as it relates to the facts of this appeal. In light of the unsettled nature of this appeal, costs shall be awarded to neither party on this appeal.

GIERKE, MESCHKE, LEVINE and VANDE WALLE, JJ., concur.

---

3. The parties have conflicting interpretations of the federal "action transmittal." However, neither party has adequately briefed the legal weight this Court should attach to the 1980 "action transmittal."

4. Rick Nelson was granted AFDC benefits based on incapacity in September 1987; it is undisputed that Debra has "borderline intellectual functioning." Debra was not represented by counsel at the Department hearing. Although we have repeatedly ruled *pro se* parties are not entitled to greater rights than parties who are represented by counsel, we believe the combination of the Nelsons' incapacities and their lack of legal representation requires a relaxation of the rule.

5. The rule that issues must be made before the administrative agency to preserve them on appeal is not absolute. We have, for example, considered the constitutionality of a statute notwithstanding the litigant's failure to raise the issue at the administrative agency hearing. *See Johnson v. Elkin*, 263 N.W.2d 123, 125 (N.D. 1978). We have also remanded an administrative appeal for further factual development of the record pursuant to § 28–32–18, N.D.C.C., when it appeared that an issue was raised but not fully developed. *See Matter of Sadek*, 420 N.W.2d 340 (N.D.1988).