**Debbie OHLSON, Petitioner and Appellant,**

v.

**NORTH DAKOTA DEPARTMENT OF HUMAN SERVICES and Ramsey County Social Service Board, Respondents and Appellees.**

**Civ. No. 960012.**

Supreme Court of North Dakota.

July 18, 1996.

Duane Houdek, Legal Assistance of North Dakota, Bismarck, for petitioner and appellant.

Jean R. Mullen, Assistant Attorney General, Attorney General's Office, Bismarck, for respondents and appellees.

VANDE WALLE, Chief Justice.

Debbie Ohlson appealed from a judgment affirming a Department of Human Services decision denying her claim for medical assistance as an incapacitated parent under the Aid to Families with Dependent Children (AFDC) program. We hold that the Department's decision that Ohlson was not an incapacitated parent is supported by a preponderance of the evidence. We affirm.

Ohlson and her husband have three children. Ramsey County Social Services has had an open Medicaid file on the family since 1988 because one of the children receives medical assistance for a disability. In October 1993, Ohlson began experiencing low back pain, abdominal pain, and burning on urination, and she requested medical assistance as an incapacitated parent under the AFDC program.

In January 1994, a State Review Team (SRT) found Ohlson's medical record established that, effective October 1, 1993, she had met the eligibility criteria for medical assistance as an incapacitated parent because of "[l]ow back pain, chronic" and "status post

laparoscopy, 12–93." The SRT decision required a current medical report and an updated social report by April 30, 1994, to determine if Ohlson continued to be incapacitated. Ohlson had a hysterectomy in April 1994, and the SRT continued her on medical assistance from May 1, 1994, to permit her to recuperate. However, the SRT recommended her case be closed effective June 30, 1994, and her medical assistance benefits were terminated on that date.

In July 1994, Ohlson reapplied for medical assistance as an incapacitated parent, claiming back pain, burning after urination, and bowel trouble. The SRT, which then consisted of Dr. Joseph Cleary and social worker Kimberly Kinn, denied Ohlson's application, finding she was "not incapacitated (too ill to work or to perform household duties for at least 30 days)." Ohlson requested a hearing. After an administrative hearing, the hearing officer determined that the SRT decision did not comport with AFDC and Medicaid rules and regulations and recommended returning the matter to the SRT for a reassessment of incapacity. The Executive Director of the Department rejected the hearing officer's recommendation and issued the Department's order denying Ohlson medical assistance. The Executive Director concluded Ohlson had "chronic pain of [an] undetermined cause," but that she had not demonstrated her chronic pain was of such a debilitating nature as to reduce substantially or eliminate her ability to support or care for her eligible child for at least 30 days. The district court affirmed the Department's decision.

■ Our review of administrative agency decisions under N.D.C.C. §§ 28–32–19 and 28–32–21 requires a three-step process to determine if the agency's findings of fact are supported by a preponderance of the evidence, its conclusions of law are sustained by its findings of fact, and its decision is supported by its conclusions of law. *Bohac v. Graham*, 424 N.W.2d 144 (N.D.1988). In determining whether an agency's findings of fact are supported by a preponderance of the evidence, we do not make independent findings of fact or substitute our judgment for that of the agency; rather, we determine

only whether a reasoning mind could have reasonably determined that the agency's factual conclusions were supported by the weight of the evidence. *Id.* We review the Department's decision that Ohlson was not an incapacitated parent in that context.

Federal law establishes the medical assistance program as a jointly financed federal-state program designed to provide health care for needy families with dependent children. *See* 42 U.S.C. §§ 601 *et seq.* and 1396 *et seq.* Each state electing to participate in the program is required to establish a plan to implement the program. 42 U.S.C. §§ 1396 and 1396a. A State plan must provide medical assistance for all individuals who are categorically needy, including individuals receiving AFDC. 42 U.S.C. § 1396a(a)(10)(A). To meet the requirements of the AFDC program, a family must have a dependent child. 42 U.S.C. § 601. A dependent child is defined as a child who is deprived of parental support or care because of physical or mental incapacity of a parent. 42 U.S.C. § 606(a). 45 C.F.R. 233.90(c)(1)(iv) defines "incapacity":

> "(iv) '*Physical or mental incapacity*'. 'Physical or mental incapacity' of a parent shall be deemed to exist when one parent has a physical or mental defect, illness, or impairment. *The incapacity shall be supported by competent medical testimony and must be of such a debilitating nature as to reduce substantially or eliminate the parent's ability to support or care for the otherwise eligible child and be expected to last for a period of at least 30 days.* In making the determination of ability to support, the agency shall take into account the limited employment opportunities of handicapped individuals." [Emphasis added].

■ Ohlson asserts the federal definition of incapacity entitles her to receive medical assistance for a condition that substantially reduces or eliminates her ability either to support or to care for her eligible child. She contends the Department denied her medical assistance solely because it found she could care for her child as a "homemaker" without considering whether she had a substantially reduced ability to support her child as a "breadwinner." She argues the Depart-

ment's eligibility standard for incapacitated parents is more restrictive than the two-pronged, disjunctive definition for incapacity in the federal regulation and is therefore invalid under the supremacy clause of the federal constitution. *See Townsend v. Swank,* 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). *See also Nelson v. Cass County Social Services,* 424 N.W.2d 371, 374 n. 1 (N.D.1988).

In *Nelson,* the Department decided "incapacity" by identifying a parent's usual function in the family, either as a homemaker or as a breadwinner, and then considering whether the parent's condition significantly interfered with that function. In *Nelson,* the Department found a mother's condition did not significantly interfere with her usual function as a homemaker, but did not evaluate whether her condition also affected her ability to support the child as a breadwinner. We concluded the Department's finding about the mother's ability to care for her child as a homemaker was supported by a preponderance of the evidence. However, we said the Department's policy of restricting the inquiry to the parent's "usual" function within the home had no apparent basis in the federal regulation. *See Chaffin v. Taylor,* 521 F.Supp. 1344 (M.D.Fla.1981) [holding that parental incapacity is measured by both ability to support and ability to care for child]. We declined to construe the federal regulation or invalidate the Department's breadwinner/homemaker distinction, and we remanded to the Department "so that timely 'evidence' may be obtained and an appropriate decision can be made by the Department relating to the United States Department of Health and Human Services' interpretation of 45 CFR § 233.90(c)(1)(iv)." *Nelson,* 424 N.W.2d at 375.

Here, the Department determined any breadwinner/homemaker distinction was irrelevant because the SRT evaluated Ohlson's ability both to support and to care for her family and concluded that she had not shown she was incapacitated under either standard. The Department's decision is therefore not more restrictive than the federal regulation, and we reject Ohlson's argument to the contrary.[1]

█ Ohlson contends the Department's decision denying her medical assistance is arbitrary, capricious, and clearly erroneous. She asserts there is a "glaring lack of standards or criteria to assess incapacity."

Under N.D.A.C. § 75–02–02.1–02.1, Ohlson had the burden of establishing eligibility for medical assistance as an incapacitated parent. 45 C.F.R. 233.90(c)(1)(iv) defines "incapacity" as a "physical or mental defect, illness, or impairment" which must be "supported by competent medical testimony and must be of such a debilitating nature as to reduce substantially or eliminate the parent's ability to support or care for the otherwise eligible child and be expected to last for a period of at least 30 days." Although not as precise a standard as Ohlson would like, the definition of incapacity provides objective guidelines which require an applicant for medical assistance to show the effect of a "defect, illness, or impairment" on the parent's ability to support or care for an eligible child. That definition also emphasizes that there must be a substantial reduction or elimination of the parent's ability to support or care for the child.

█ At the administrative hearing, Ohlson testified she suffered from low back pain, burning on urination, lower abdominal pain, bladder infections, and yeast infections. Ohlson had laparoscopy surgery in December 1993 for a twisted ovarian cyst and a hysterectomy in April 1994. According to Ohlson, the hysterectomy "[s]ubstantially" reduced her pain, but she continued to suffer from lower abdominal pain and took medication. She testified she could comfortably lift between five to ten pounds without experiencing lower back pain, but that she had trouble doing things around the house like "vacuuming, washing clothes, and sometimes cooking." She also testified she could not sit comfortably for more than 20 minutes and she was able to sleep only three to four hours a night.

---

1. Because of our resolution of this issue, we do not express an opinion about the scope of the Department's administrative regulations. *See* N.D.A.C. §§ 75–02–01.1–15; 75–02–02.1–15.

Ohlson's primary care physician, Dr. Russell Petty, testified Ohlson was at "least moderately incapacitated right now as far as being able to work outside the home." Dr. Petty reported that Ohlson continues to have "urinary symptoms, abdominal pain and low back pain," all of which have defied specific diagnosis by numerous physicians, but which "would result in a reduced ability to work due to her chronic pain." Dr. Petty also testified Ohlson's condition was of such a "debilitating nature as to reduce substantially or eliminate her ability to work or care for her children."

Dr. Cleary, a member of the SRT, testified Ohlson's urinary tract infection was not of such a debilitating nature as to reduce substantially or eliminate her ability to support or care for her children. Although Dr. Cleary admitted that chronic pain, by itself, could be incapacitating and that he had no reason to doubt Ohlson had chronic pain, he also testified the medical testing of Ohlson did not support a finding of incapacity. Dr. Cleary testified that, based on the available medical reports and his medical experience and judgment, Ohlson was not incapacitated under the federal regulation.

The Department found:

"The greater weight of the evidence shows that Ohlson has chronic pain of undetermined cause. However, Ohlson has not demonstrated that her chronic pain is 'of such a debilitating nature as to reduce substantially or eliminate ... [her] ability to support or care for the otherwise eligible child ... [lasting] for a period of at least 30 days.' Giving great weight to the testimony of Ohlson's primary care physician (who believes she has a reduced ability to work due to chronic pain), the evidence of incapacity under the federal guidelines [45 CFR § 233.90(c)(iv)] is nonetheless inconclusive.

"Further, the greater weight of the evidence shows that the medical testimony is inclusive and that most, if not all, the doctors reviewing this matter openly wonder about whether further testing should be done. Many recommend further testing. The medical testimony is just not conclusive as to Ohlson's incapacity, re-

gardless of the criteria. Some doctors said she was incapacitated to some extent. Dr. Cleary's views gave considerable weight to the neurologist's analysis. Dr. Cleary thought incapacity was not demonstrated. The doctors, as a whole, were not satisfied that the source of Ohlson's pain had been established. None really offered a diagnosis (other than chronic pain—and that was really offered after the SRT determination). Most just ruled out causes based on the testing that they did. All recognized or accepted the mostly subjective explanation and evidence of pain, as well as the itching and burning sensations. Most of the doctors offered no opinion on incapacity. No one knows, for certain, the cause of Ohlson's problems or whether, for certain, she has physical problems (even psychological evaluations were discussed as being possibly of value, but were not done).

\* \* \*

"The chronic pain complaint, without information supporting either its cause or its effect on Ohlson's incapacity, was all that was provided to the SRT. It is evident that before the SRT can reach the conclusion Ohlson seeks, she must focus information and provide medical evidence that ties the complaint to a 'defect, illness, or impairment,' and explains why that defect, illness, or impairment so adversely affects her life and activities that she suffers from an incapacity that meets the standard required by law."

Although there was evidence Ohlson suffered from chronic pain, the medical testimony about the effect of Ohlson's chronic pain on her ability to serve as a homemaker or as a breadwinner was indefinite. The Department concluded Ohlson had failed to establish by competent medical evidence that she was incapacitated under both the breadwinner and homemaker standard. We do not make independent findings or substitute our judgment for that of the Department. *Bohac.* We conclude a reasoning mind reasonably could have concluded Ohlson failed to establish her chronic pain was of such a debilitating nature as to reduce substantially or eliminate her ability to support or care for

her child for at least 30 days. The Department's decision that Ohlson was not an incapacitated parent is supported by a preponderance of the evidence.

We affirm the judgment upholding the Department's decision.

SANDSTROM, NEUMANN, MARING and MESCHKE, JJ., concur.